## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JIMMY GLENN HENDRIX,** | |
| **Petitioner,** | |
| **v.** | **Case No. 23-CV-0322-JFH-JFJ** |
| **CARRIE BRIDGES, Warden,** | |
| **Respondent.** | |

## OPINION AND ORDER

Petitioner Jimmy Glenn Hendrix ("Hendrix"), a self-represented Oklahoma prisoner, seeks federal habeas relief through a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"). Dkt. No. 1. Hendrix claims he is detained, in violation of his Fourteenth Amendment right to due process, under the criminal judgment entered against him in Tulsa County District Court Case No. CF-2008-1228. This matter is before the Court on Respondent's Motion to Dismiss Petition as a Second or Successive Petition and/or as Untimely ("Motion to Dismiss") [Dkt. No. 5]. Respondent asserts that Hendrix did not comply with 28 U.S.C. § 2244(b)'s procedural requirements before filing a second or successive habeas petition and urges the Court to dismiss the petition for lack of jurisdiction. Alternatively, Respondent asserts that Hendrix did not comply with 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations and urges the Court to dismiss the Petition as untimely. Hendrix opposes the Motion to Dismiss.

Having considered the Motion to Dismiss and Brief in Support of the Motion to Dismiss [Dkt. Nos. 5, 6], Hendrix's Response to the Motion to Dismiss [Dkt. Nos. 7, 10, 12],[1] the record of state court proceedings, and applicable law, the Court finds and concludes that the Petition is not a second or successive petition and that the Petition is timely.  The Court therefore DENIES the Motion to Dismiss.  The Court finds, however, that no additional briefing is necessary as to the Fourteenth Amendment due process claim asserted in the Petition and that Hendrix has not shown that federal habeas relief is warranted as to that claim.  The Court therefore DENIES the Petition.

## I.      Background

In 2008, a jury found Hendrix guilty, in Tulsa County District Court Case No. CF-2008-1228, of first-degree murder and possession of a firearm after former conviction of a felony.  Dkt. No. 6 at 24, 27.[2]  The trial court sentenced Hendrix to life imprisonment as to the murder conviction and thirty years' imprisonment as to the firearm conviction and ordered that he serve the sentences consecutively.  *Id.*  Hendrix filed a direct appeal, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his judgment in February 2010.  *Id.* at 27-28.  Hendrix did not file a petition for writ of certiorari in the United States Supreme Court.  Dkt. No. 1 at 3.  Hendrix's judgment thus became final in May 2010.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (discussing when a state court judgment becomes final for a state prisoner seeking federal habeas relief under § 2254(a)); *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 687 n.1 (Okla. Crim. App. 2021) ("*Wallace*") (noting that a conviction is final "where judgment was rendered, the availability of

---

[1]  In a prior Order, the Court granted Hendrix's unopposed requests to supplement and consolidate his responses to the Motion to Dismiss and determined that the Court would therefore consider: (1) the Response to the Motion to Dismiss; (2) the Supplement to the Response; and (3) the Motion to File a Supplemental Response (which includes within it the second supplemental response) [Dkt. Nos. 7, 10, 12], collectively, as Hendrix's Response to the Motion to Dismiss.

[2]  For consistency, the Court's citations refer to the CM/ECF header pagination.

appeal exhausted, and the time to petition for certiorari had elapsed" (citing *Teague v. Lane*, 489 U.S. 288, 295 (1989))).

In September 2010, Hendrix filed a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("2010 Petition") in this court, claiming he was in custody in violation of federal law under the judgment entered against him in Tulsa County District Court Case No. CF-2008-1228.  Dkt. No. 6 at 125.  This court denied the 2010 Petition, and the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") dismissed Hendrix's appeal. *Hendrix v. Trammell*, No. 10-CV-0600-CVE-TLW, 2013 WL 3539018 (N.D. Okla. July 11, 2013) (unpublished), *certificate of appealability denied and appeal dismissed*, 576 F. App'x 767 (10th Cir. Aug. 13, 2014).

Hendrix sought postconviction relief in state court on three occasions.  Relevant to this proceeding, Hendrix filed his third application for postconviction relief in September 2017.  Dkt. No. 6 at 318.  In that application, Hendrix asserted one claim:  "The district court was without jurisdiction to impose a sentence against [him] because the United States District Court had exclusive and sole jurisdiction."  *Id.* at 319.  In support of this claim, Hendrix alleged that he is Indian,[3] that he committed his crimes of conviction in Indian country, as defined by 18 U.S.C. § 1151, and that the United States had exclusive jurisdiction to prosecute him under the Major Crimes Act, 18 U.S.C. § 1153 ("MCA").  *Id.* at 320.  Citing the Tenth Circuit's then "recent ruling in *Murphy v. Royal*, 866 F.3d 1164, 1205 (10th Cir. 2017)," and the unsettled status of the law

---

[3] Because "[t]he term 'Indian' is 'not defined in [18 U.S.C. § 1152] or in related statutes addressing criminal jurisdiction in Indian Country,'" the Tenth Circuit "ha[s] adopted a two-part evidentiary test to determine whether a person is an Indian for the purposes of federal law."  *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) (first alteration in original) (quoting *United States v. Prentiss*, 273 F.3d 1277, 1279 (10th Cir. 2001)).  Under this test, a factfinder must determine whether the person:  (1) has "some Indian blood;" and (2) is "recognized as an Indian by a tribe or by the federal government."  *Prentiss*, 273 F.3d at 1280.

"concerning [the] Creek Reservation land and the State of Oklahoma's lack of jurisdiction to prosecute crimes that occur on that land," the State of Oklahoma ("the State") asked the state district court to hold Hendrix's third application in abeyance. *Id.* at 324.  The state district court granted that request. *Id.* at 326.

In July 2020, the Supreme Court held that Congress never disestablished the Muscogee Creek Nation Reservation and clarified that "the MCA applies to Oklahoma according to its usual terms:   Only the federal government, not the State, may prosecute Indians for major crimes committed in Indian country." *McGirt v. Oklahoma*, 591 U.S. 894, 932-33 (2020).   Relying on *McGirt*, Hendrix promptly moved for summary judgment as to the Indian country jurisdiction claim raised in his third application for postconviction relief.  Dkt. No. 6 at 333.   In the wake of *McGirt*, the OCCA issued several decisions wherein it:  (1) concluded that other reservations in Oklahoma have not been disestablished; and (2) held that state law permitted defendants to raise Indian country jurisdiction claims in applications for postconviction relief even if the defendants' convictions were final before *McGirt* was decided.  *Wallace*, 497 P.3d at 689 & n.3.

In April 2021, the state district court issued an order granting Hendrix's third application for postconviction relief, vacating his criminal judgment, and dismissing his criminal case for lack of jurisdiction.  Dkt. No. 6 at 375-77.  Based on the parties' stipulated facts, the state district court concluded that Hendrix is Indian and that he committed his crimes of conviction in Indian country. *Id.* at 375-76.  The state district court further concluded that Hendrix's claim challenging his final judgment was not procedurally barred under state law because "issues of subject matter jurisdiction are never waived," and that the state district court lacked jurisdiction over Hendrix's criminal case because that court's "otherwise unlimited subject matter jurisdiction . . . is preempted by 18 U.S.C. §§ 1151-1153." *Id.* at 376 (internal quotation marks omitted).  The State did not seek a stay or file

a postconviction appeal to challenge the order granting postconviction relief and dismissing Hendrix's case.[4]

Four days after the state district court dismissed Hendrix's criminal case, the federal government filed a criminal complaint in this court charging Hendrix, under the MCA, with first-degree murder in Indian country. *Id.* at 378; *see also* Dkt. No. 1, N.D. Okla. Case No. 21-CR-196-JFH. A federal grand jury later returned an indictment charging Hendrix with using and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j)(1). Dkt. No. 6 at 384. In July 2021, Hendrix pleaded guilty as charged in the indictment and, in October 2021, this court sentenced Hendrix to a 216-month term of imprisonment to be served concurrently with the sentences imposed against him in Tulsa County District Court Case No. CF-2008-1228. *Id.* at 386-87; *see also* Dkt. No. 73, N.D. Okla. Case No. 21-CR-196-JFH.

Meanwhile, in August 2021, the OCCA held in *Wallace* "that *McGirt* and [the OCCA's] post-*McGirt* decisions recognizing [that several reservations had not been disestablished] shall not apply retroactively to void a conviction that was final when *McGirt* was decided" and that "[a]ny

---

[4] Under Oklahoma law, the State had ten days from April 1, 2021, to seek a stay of the state district court's order granting postconviction relief, twenty days to file a notice of appeal, and either thirty or sixty days to perfect a postconviction appeal in the OCCA. *See* Okla. Stat. tit. 22, § 1084 (providing that state district court's written order granting or denying postconviction relief "is a final judgment"); Okla. Stat. tit. 22, § 1087 (providing that "[a] final judgment" in a postconviction proceeding "may be appealed to the Court of Criminal Appeals on petition in error filed either by the applicant or the state within thirty (30) days from the entry of the judgment" and further providing that, "[u]pon motion of either party on filing of notice of intent to appeal, within ten (10) days of entering the judgment, the district court may stay the execution of the judgment pending disposition on appeal"); *Weatherford v. State*, 13 P.3d 987, 987-89 (Okla. Crim. App. 2000) (discussing § 1087 and explaining that "if a party desires to invoke the appellate jurisdiction of this Court over post-conviction proceedings, he must do so within the time mandated by the Legislature."); Rule 5.2(C)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2021) (requiring party to file notice of appeal within twenty days from the date the order granting or denying postconviction relief is filed, providing that "[t]he filing of the Notice of Post-Conviction Appeal in the District Court is jurisdictional and failure to timely file constitutes waiver of the right to appeal," and providing sixty (60) days to perfect the appeal).

statements, holdings, or suggestions to the contrary in [the OCCA's] previous cases are hereby overruled." *Wallace*, 497 P.3d at 689.

One month later, the State filed a motion in Hendrix's previously dismissed state criminal case, asking the state district court to vacate the order granting Hendrix's third application for postconviction relief. Dkt. No. 6 at 393-99. The state district court held a hearing on November 4, 2021, granted the motion over Hendrix's objection, and stayed its ruling pending an appeal by Hendrix. *Id.* at 366. In a written Order of Vacatur, signed January 21, 2022, and filed January 26, 2022, the state district court acknowledged that "the State missed normal procedural time limits for appeal," but the state district court relied on *Wallace* to conclude that its April 2021 order granting postconviction relief "was unauthorized by state law and is void." *Id.* at 412-13. The state district court therefore vacated and set aside its April 2021 order but reiterated that the Order of Vacatur would be stayed pending Hendrix's appeal. *Id.* at 413.

On January 24, 2022, Hendrix filed in the OCCA an Application to Assume Original Jurisdiction and Petition for Writ of Prohibition or in the Alternative for Writ of Mandamus ("Writ Application"), challenging the validity of the Order of Vacatur. *Id.* at 415.[5] Hendrix asserted four claims: (1) the Order of Vacatur was contrary to state law because the order granting postconviction relief became final when the State did not timely appeal; (2) the state district court erred when it ruled in the Order of Vacatur that the order granting postconviction relief was void; (3) the state district court violated the Ex Post Facto Clause by applying *Wallace* to vacate the pre-*Wallace* order granting postconviction relief; and (4) the Order of Vacatur violated his Fourteenth

---

[5]  In support of his Writ Application, Hendrix alleged he had "no legal remedy other than a writ of prohibition because his case was vacated" and the Order of Vacatur, allegedly entered without authority, "would not trigger an appeal." Dkt. No. 6 at 426.

Amendment right to due process because it arbitrarily deprived him of a liberty interest by vacating the final, unappealed order granting him postconviction relief. *Id.* at 429-35.

The OCCA denied Hendrix's Writ Application on April 18, 2023, in OCCA Case No. PR-2022-86. *Id.* at 437. Applying state law and its own decisions, including *Wallace*, the OCCA reasoned that the state district court had authority to issue the Order of Vacatur because Hendrix's conviction was final before *McGirt*, the grant of postconviction relief and dismissal of Hendrix's case was "unauthorized by law," and "nothing in the Oklahoma statutes, or [the OCCA's] decisional authority, prohibited the [state district court's] exercise of jurisdiction." *Id.* at 439-41. Applying federal law, the OCCA rejected Hendrix's ex post facto claim, reasoning (1) that, under *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001), "[t]he *Ex Post Facto* Clause, by its own terms, does not apply to courts," and (2) that the state district court's initial grant of postconviction relief was "not dictated by" state law because it was based, in part, on a pre-*Wallace* decision from the OCCA that was not final when the state district court granted postconviction relief and that was later vacated and withdrawn. *Id.* at 441-42 (internal quotation marks omitted). As to the due process claim, the OCCA reasoned that "[b]ecause the initial grant of post-conviction relief in this matter was based upon a decision [from the OCCA] with no precedential value and which was later withdrawn," the trial court's action of vacating the order granting postconviction relief did not violate Hendrix's "right to due process" because Hendrix "ha[d] no legitimate liberty interest in judicial release." *Id.* at 442.

Hendrix filed the instant Petition on July 7, 2023.[6]

---

[6] The Clerk of Court received and filed the Petition on July 27, 2023. Dkt. No. 1 at 1. But Hendrix states, under penalty of perjury, that he placed the Petition in the prison's legal mailing system on July 7, 2023. Dkt. No. 1 at 15. The Court thus deems the Petition filed on July 7, 2023. *See* Rule 3(d), *Rules Governing Section 2254 Cases in the United States District Courts*.

## II.     Discussion

A federal court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  In the Petition, Hendrix identifies only one ground for federal habeas relief.  He claims that "the district court's Order of Vacatur re: the dismissal of [his] state conviction violates [his] due process rights under the Fourteenth Amendment." Dkt. No. 1 at 5.  As factual support for this claim, Hendrix states:  "The Tulsa County District Court granted my application for PCR on 4.1.2021, pursuant to *McGirt v. Oklahoma* [and] dismissed my state conviction.  The court granted the State's motion to vacate the order granting PCR based on OCCA's decision in *Matloff v. Wallace*, thereby reinstating my state conviction." *Id.*

The due process claim is not well-developed, but because Hendrix appears without counsel, the Court must construe the Petition and Hendrix's other papers with leniency.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In his Response to the Motion to Dismiss, Hendrix states that his "claim is that the [state district court] and OCCA violated his [right to] due process under the Fourteenth Amendment when it vacated his conviction for lack of jurisdiction and authority, then reinstated it out of time." Dkt. No. 7 at 9; *see also id.* at 3 (asserting that the State "violated [his] 14th Fourteenth Amendment to due process by reinstating said conviction and sentence" even though "the State waived its right to appeal and the order [granting postconviction relief] was final").  In his Motion for Leave, Hendrix refers to *Hicks v. Oklahoma*, 447 U.S. 343 (1980), and states:  "Respondent vacated its order of dismissal for lack of jurisdiction even though [Hendrix] had been released from state custody and order of dismissal had become final when the state failed to appeal." Dkt. No. 13 at 2.

As the Court understands it, Hendrix's Petition asserts the same due process claim that he presented to the OCCA through his Writ Application—namely, that the State violated his Fourteenth Amendment right to due process by arbitrarily depriving him of a liberty interest that he obtained when the state district court's order granting postconviction relief became final. *See* Dkt. No. 6 at 434-35 (citing *Hicks* and asserting that the "Order of Vacatur directly attacks the liberty interest of" Hendrix and resulted in "an arbitrary deprivation by the State of a Fourteenth Amendment Right in violation of Due Process" because the State waived its right to appeal the order granting postconviction relief).  Respondent appears to share this understanding of Hendrix's claim. *See* Dkt. No. 6 at 16 ("Petitioner's only ground for relief challenges the state district court's order granting vacatur of its earlier order granting post-conviction relief . . . arguing that this constituted a violation of his due process rights under the Fourteenth Amendment.").  With this understanding of the Fourteenth Amendment due process claim asserted in the Petition, the Court turns to Respondent's Motion to Dismiss.

### A.    Motion to Dismiss

Respondent moves to dismiss the Petition, asserting that Hendrix did not comply with 28 U.S.C. § 2244(b)'s procedural requirements before filing a second or successive habeas petition and, alternatively, that Hendrix did not comply with 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations.  Dkt. Nos. 5, 6.  Hendrix opposes the Motion to Dismiss, arguing that his Petition is not second or successive because it challenges the "new judgment" that was entered against him

when the state district court reinstated his previously vacated judgment, and that the Petition is timely.  Dkt. Nos. 7, 10, 12.

### 1.      Second or successive petition

"A state prisoner is entitled to one fair opportunity to seek federal habeas relief from his conviction.  But he may not usually make a 'second or successive habeas corpus application.'  28 U.S.C. § 2244(b)."  *Banister v. Davis*, 590 U.S. 504, 507 (2020); *see also Panetti v. Quarterman*, 551 U.S. 930, 947 (2007) ("In the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar.").[7]  Section 2244(b) provides, in relevant part:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (B)      (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>>
>>      (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for

---

[7]   Before Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "whether to entertain a successive habeas petition was left to 'the sound discretion of the federal trial judges.'"  *Banister*, 590 U.S. at 532 (Alito, J., dissenting) (quoting *Sanders v. United States*, 373 U.S. 1, 18 (1963).  After AEDPA, the discretion to entertain second or successive habeas petitions is governed by § 2244(b) and the Supreme Court's decisions interpreting this statute.

an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b).  "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of [§ 2244(b)(2)]."  28 U.S.C. § 2244(b)(3)(C).  If a state prisoner does not obtain permission from the court of appeals before filing a second or successive habeas petition, the district court lacks jurisdiction to adjudicate the petition and must either dismiss the petition or transfer the petition to the court of appeals for authorization.  *In re Cline*, 531 F.3d 1249, 1251-52 (10th Cir. 2008) (*per curiam*).

Respondent contends that the Petition is an unauthorized second or successive petition that must be dismissed for lack of jurisdiction because Hendrix brings this action to challenge his custody under the same judgment that he challenged through his 2010 Petition—not a new judgment—and Hendrix has not shown that he obtained the Tenth Circuit's permission before he filed the instant Petition.  Dkt. No. 6 at 14, 16.  Respondent further contends that Hendrix's Fourteenth Amendment due process claim, while not presented in the 2010 Petition, is not the type of new claim contemplated in § 2244(b)(2) that may be raised in a second or successive petition.  *Id.* at 16-17.[8]  The record supports Respondent's contentions that this is Hendrix's second-in-time

---

[8]  Respondent also argues that even assuming the Fourteenth Amendment due process claim could fall within § 2244(b)(2)'s exceptions for new claims, this claim is not cognizable on federal habeas review because "it relates to an alleged error or defect in the post-conviction proceedings on Petitioner's *McGirt* claim, not the constitutionality of his original convictions and sentences." Dkt. No. 6 at 17-18.  The Tenth Circuit recently rejected this argument when presented with a Fourteenth Amendment due process claim arising from nearly identical facts.  *Graham v. White*, 101 F.4th 1199, 1204-05 (10th Cir. 2024).  Like the petitioner in *Graham*, Hendrix alleges a cognizable federal claim because he is "complaining about the reinstatement of [his] convictions through the state district court's grant of post-conviction relief to the State," not asserting a "challenge to post-conviction procedures."  *Id.* at 1205.  His claim that the State deprived him of a liberty interest by reinstating his previously vacated conviction implicates his Fourteenth Amendment right to due process.  The Court thus rejects Respondent's argument that Hendrix fails to state a cognizable federal habeas claim.

11

habeas petition, that he did not obtain the requisite authorization before filing the Petition, and that his new claim does not fall within either exception identified in § 2244(b)(2).[9]  Applying the plain language of § 2244(b), it would seem appropriate to grant Respondent's request to dismiss the Petition.

But § 2244(b)'s procedural requirements apply only to habeas petitions that are "second or successive," and the Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application."  *Panetti*, 551 U.S. at 944; *see also Magwood v. Patterson*, 561 U.S. 320, 335 n.11 (2010) ("This case does not require us to determine whether § 2244(b) applies to every application filed by a prisoner in custody pursuant to a state-court judgment if the prisoner challenged the *same* state-court judgment once before."). *But see Burton v. Stewart*, 549 U.S. 147, 153, 156 (2007) (concluding second-in-time habeas petition was "second or successive" under § 2244(b) because state prisoner "twice brought claims contesting the same custody imposed by the same judgment of a state court" through a 1998 petition and a 2002 petition, and "there was no new judgment intervening between the two habeas petitions").  Instead, the Supreme Court has teased out the meaning of "second or successive" largely by identifying petitions that are not second or successive.  For example, the Supreme Court "determined that a habeas petition filed after an initial petition was dismissed" for failure to

---

[9]  Hendrix did seek permission from the Tenth Circuit after he filed the Petition, and the Tenth Circuit denied his motion for authorization.  Dkt. No. 11.  In doing so, the Tenth Circuit reasoned that Hendrix failed to make a prima facie showing that his new Fourteenth Amendment due process claim satisfies the requirements set forth in § 2244(b)(2).  *Id.* at 4-5.  The Tenth Circuit declined, however, to consider Hendrix's alternative argument that the Petition is not second or successive because it challenges a new judgment and thus is not subject to § 2244(b)'s procedural requirements.  *See id.* at 5 (leaving it to the district court to decide in the first instance whether the Petition is a second or successive habeas petition).

exhaust available state remedies "without an adjudication on the merits is not a 'second or successive' petition." *Slack v. McDaniel*, 529 U.S. 473, 489 (2000).  And the *Banister* Court held that a motion brought under Federal Rule of Civil Procedure 59(e) to alter or amend a judgment entered in a habeas proceeding is not a successive petition; it "is instead part and parcel of the first habeas proceeding." *Banister*, 590 U.S. at 507.  In the death penalty context, the Supreme Court has held that a second or subsequent habeas petition asserting a *Ford* claim is not second or successive:  (1) if the *Ford* claim previously was presented in a first habeas petition and that claim was dismissed as unripe or "premature," *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643 (1998); or (2) if the *Ford* claim is presented for the first time in a second or subsequent habeas petition filed after the *Ford* claim first becomes ripe, *Panetti*, 551 U.S. at 947.[10]  The Supreme Court has also explained that when a second or subsequent habeas petition "challenges a new judgment for the first time, it is not 'second or successive' under § 2244(b)."  *Magwood*, 561 U.S. at 324; *see also Burton*, 549 U.S. at 155-56 (rejecting petitioner's argument "that his 1998 and 2002 petitions challenged different judgments" because petitioner was in state custody pursuant to the same 1998 judgment when he filed each petition and "there was no new judgment intervening between the two habeas petitions").  Hendrix makes two arguments to support his position that his Petition is not second or successive.

### a.    "New judgment" under *Magwood*

Relying on *Magwood*, Hendrix contends the Petition is not second or successive because the state district court entered a "new judgment" when it reinstated his previously vacated

---

[10]  A *Ford* claim is a claim asserted under *Ford v. Wainwright*, 477 U.S. 399 (1986), alleging that a prisoner who was found competent to be tried, convicted, and sentenced to death should not be executed because his present mental condition has deteriorated to the point of rendering him incompetent and therefore ineligible to be executed.  *Panetti*, 551 U.S. at 935.

judgment.  Dkt. No. 7 at 2-4, 13; Dkt. No. 10 at 3-4.  Hendrix argues that his original judgment, filed on December 18, 2008 ("2008 Judgment"), was "entirely destroyed" by the April 2021 order granting postconviction relief and vacating the 2008 Judgment and that the Order of Vacatur reinstating the 2008 Judgment thus resulted in a "new judgment."  Dkt. No. 7 at 3.  Respondent disagrees, arguing that Hendrix's reliance on *Magwood* is misplaced because Hendrix "was not subject to a resentencing or a new or amended judgment."  Dkt. No. 6 at 18-19.

On this point, Respondent has the better argument.  The specific question presented in *Magwood* was "whether [the petitioner's second habeas] application challenging his 1986 death sentence, imposed as part of resentencing in response to a conditional writ from [the federal habeas court that adjudicated the petitioner's first habeas application], is subject to the constraints that § 2244(b) imposes on the review of 'second or successive' habeas applications."  *Magwood*, 561 U.S. at 330.  The *Magwood* Court held that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged."  *Id.* at 333.  The *Magwood* Court agreed with the petitioner's argument that "his 1986 resentencing led to a new judgment, and his first application challenging that new judgment" was not a second or successive petition subject to § 2244(b)'s procedural requirements.  *Id.* at 331.  The *Magwood* Court reasoned that the second-in-time habeas petition, filed after a full resentencing hearing and imposition of a new sentence was not second or successive because, "where . . . there is a 'new judgment intervening between the two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive' at all."  *Magwood*, 561 U.S. at 341-42 (quoting *Burton*, 549 U.S. at 156); *see also id.* at 338 (explaining that "the existence of a new judgment is dispositive" on the issue of whether a second or successive § 2254 petition is "second or successive" under § 2244(b)).  However, while *Magwood* found that a state court resentencing proceeding that occurred after a state prisoner

14

obtained federal habeas relief resulted in a new judgment, *Magwood* offered little guidance as to what, if any, other proceedings might result in a new judgment. *See id.* at 331, 339 (reasoning, in part, that it was "especially clear" that the petitioner in *Magwood* was challenging a new judgment because "the state court conducted a full resentencing and reviewed the aggravating evidence afresh" before resentencing the petitioner to death); *see also United States v. Quary*, 881 F.3d 820, 823 (10th Cir. 2018) (noting that *Magwood* does not define the term "new judgment" and finding persuasive decisions from other circuits holding that a reduction in sentence under 18 U.S.C. § 3582(c)(2) does not result in a new judgment). But the consensus among the circuit courts is that there must be some substantive change to the conviction or sentence for there to be a "new judgment." *See* Patrick Cothern, *What Is "New"?: Defining "New Judgment" After Magwood*, 117 Mich. L. Rev. 1669, 1677, nn.70, 71 (2019).

Hendrix cites three out-of-circuit cases to support his position but all three appear to align with this consensus because, in each case, the petitioner sought federal habeas relief after a state court granted some form of relief to the petitioner and filed an amended judgment. *See Smith v. Williams*, 871 F.3d 684, 685-88 (9th Cir. 2017) (applying *Magwood*'s judgment-based approach to conclude that the petitioner's fourth-in-time habeas petition was not barred by one-year statute of limitations because "*Magwood* compels the conclusion that the judgment from which the AEDPA statute of limitations runs is the one pursuant to which the petitioner is incarcerated," and "[i]t is of no moment that the Second Amended Judgment *reinstated* counts on which [the petitioner] had originally been convicted rather than adding *new* counts of conviction" (emphases in original)); *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015) (describing *Magwood* as holding "that a petition challenging a new sentence imposed after a full resentencing and leading to a new judgment does not count as second or successive—even if the claimant previously filed petitions

15

that challenged the original sentence and even if he raised or could have raised the same claims in those earlier petitions" and applying *Magwood*'s reasoning to hold "that a habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed conviction without triggering the 'second or successive' requirements"); *Crangle v. Kelly*, 838 F.3d 673, 675-80 (6th Cir. 2016) (applying *King*'s rationale and concluding that a "state-court order imposing post-release control," though styled as a nunc pro tunc order, was in fact a "new judgment" because it imposed "[a] new, worse-than-before sentence" after the state prisoner obtained a writ of mandamus directing the state trial court to issue a sentencing entry that complied with state post-release control provisions).  As Respondent contends, Hendrix's case differs from these three cases in one significant respect:  the state district court neither resentenced him nor entered a new or amended judgment.  Rather, the state district court:  (1) filed the 2008 Judgment in December 2008; (2) vacated the 2008 Judgment in April 2021; (3) filed the Order of Vacatur in January 2022, vacating the April 2021 order; and (4) did not, at any point in state court postconviction proceedings, file an amended judgment substantively altering Hendrix's convictions or sentences.

In sum, the legal effect of the Order of Vacatur reinstated the 2008 Judgment as if it had never been vacated.  And, under the facts of this case, there was no resentencing proceeding, no new assessment of the evidence, and no substantive change to Hendrix's convictions or sentences.  Thus, Hendrix presently is in state custody pursuant to the 2008 Judgment and that is the same judgment he challenged through the 2010 Petition.  And there is no intervening new judgment filed between the 2010 Petition and the instant Petition that would permit him to avoid the second or successive bar.  The Court thus rejects Hendrix's *Magwood*-based arguments.

b.      "Unripe" claim under *Panetti*

Nevertheless, Hendrix's second argument persuades this Court that Hendrix does not need

a "new judgment" to show that the Petition is not a second or successive habeas petition.  Relying

on *Panetti*, Hendrix asserts that his Petition is not second or successive because "the alleged

[Fourteenth Amendment due process] violation occurred only after the denial of the first petition."

Dkt. No. 7 at 11.  Hendrix argues that § 2244(b)'s gate-keeping provisions do not apply because

the Order of Vacatur "gave [him] a basis" for that claim and the "Fourteenth Amendment claim

here did not exist" when he filed the 2010 Petition.  *See id.* at 12 (citing *Stewart v. United States*,

646 F.3d 856 (11th Cir. 2011)).  Respondent does not discuss *Panetti* in the Motion to Dismiss

and did not file a reply brief to address Hendrix's second argument.  Regardless, Tenth Circuit

precedent supports Hendrix's view.

In *In re Weathersby*, 717 F.3d 1108, 1109-11 (10th Cir. 2013), the Tenth Circuit applied

*Panetti* and *Stewart* to consider whether a federal prisoner's successive motion to vacate, set aside

or correct sentence, filed under 28 U.S.C. § 2255, was a second or successive motion subject to §

2255(h)'s gate-keeping requirements.[11]  The movant in *Weathersby* sought to reopen his federal

sentence, alleging that he should be resentenced because several of his state convictions that were

used to enhance his federal sentence had been vacated.  *Weathersby*, 717 F.3d at 1109-10.  The

Tenth Circuit had previously held that "[i]f a defendant successfully attacks state sentences, he

may then apply for reopening of any federal sentence enhanced by the state sentences."  *Id.*

---

[11]  Section 2255 provides a postconviction remedy for federal prisoners to collaterally attack their
sentences after the conclusion of direct review.  *See Jones v. Hendrix*, 599 U.S. 465, 469 (2023).
Like § 2254 petitions filed by state prisoners, § 2255 motions filed by federal prisoners are subject
to the AEDPA's bar against "second or successive" motions, and the gate-keeping provisions that
apply to each type of remedy are substantially the same.  *Id.* at 469, 476; *Weathersby*, 717 F.3d at
1110; *compare* 28 U.S.C. § 2244(b), *with* 28 U.S.C. § 2255(h).

(quoting *United States v. Cox*, 83 F.3d 336, 339 (10th Cir. 1996)); *see also Johnson v. United States*, 544 U.S. 295, 303 (2005) (reiterating "that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated"). The *Weathersby* court described *Panetti* as concluding "that a claim that was not ripe at the time the state prisoner filed his first federal habeas petition would not be considered 'second or successive' under § 2244(b) if the petitioner asserted the claim in a later habeas petition once it became ripe." *Weathersby*, 717 F.3d at 1110; *see also id.* (noting that *Magwood* described *Panetti* as having 'created an exception to § 2244(b) for a second application raising a claim that would have been unripe had the petitioner presented it in his first application'" (alterations omitted) (quoting *Magwood*, 561 U.S. at 332)); *Magwood*, 561 U.S. at 343 (Breyer, J., concurring in part, and concurring in judgment) (noting that the *Magwood* Court "neither purports to alter nor does alter [the] holding in *Panetti*," and that "if [the petitioner] were challenging an undisturbed state-court judgment for the second time, abuse-of-the-writ principles would apply, including *Panetti*'s holding that an 'application' containing a 'claim' that 'the petitioner had no fair opportunity to raise' in his first habeas petition is not a 'second or successive' application").

Relying on *Johnson*, the *Weathersby* court explained that "relief under § 2255 is not available until the state conviction used to enhance the federal sentence is vacated" and that "[i]t is the fact of the state court vacatur that gives rise to the federal claim." *Weathersby*, 717 F.3d at 1110. Citing the reasoning in *Stewart*, *Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009), and *In re Jones*, 652 F.3d 603 (6th Cir. 2010), the Tenth Circuit concluded "that if, as [the movant] represents, the state court did not vacate his convictions until after his first § 2255 proceedings were concluded, so the basis for his proposed § 2255 claim did not exist when those proceedings were ongoing, his claim to reopen his federal sentence based on the state court's vacatur is not

'second or successive' and does not require our prior authorization." *Weathersby*, 717 F.3d at 1111.

Without invoking *Weathersby* by name, Hendrix essentially asks this Court to apply its reasoning. Under the unique circumstances of this case, the Court concludes that is a fair request. Hendrix's Fourteenth Amendment due process claim rests on what he believes is a constitutional violation that occurred in state postconviction proceedings held several years after the conclusion of the federal habeas proceedings prompted by his 2010 Petition. Respondent acknowledges that Hendrix "did not raise this claim in his 2010 [P]etition." Dkt. No. 6 at 16. But Respondent avoids stating the obvious reason for that omission: the facts underlying Hendrix's claim—i.e., the fact that the state district court entered an Order of Vacatur reinstating his previously vacated 2008 Judgment—did not exist until more than a decade after Hendrix filed the 2010 Petition. *See Weathersby*, 717 F.3d at 1110 (explaining that when "[i]t is the fact of the state court vacatur that gives rise to the federal claim" and "the state court did not vacate [the movant's] convictions until after his first § 2255 proceedings were concluded," the § 2255 motion asserting the previously nonexistent claim is not second or successive); *Jones*, 652 F.3d at 605 (holding § 2254 claim that was not ripe when first petition was filed, because it was based on events that had not yet occurred, was not a "second or successive" claim subject to § 2244(b)(3)(A)'s preauthorization requirement); *Leal Garcia*, 573 F.3d at 222 (reasoning that when "the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous [§ 2254] petition, the later petition based on that defect may be non-successive").

Because the facts underlying his Fourteenth Amendment due process claim did not exist until well after the conclusion of his 2010 Petition, the instant Petition asserting that claim is not second or successive.

2.      **Timeliness**

Respondent alternatively argues that the Petition should be dismissed as barred by §

2244(d)(1)'s one-year statute of limitations.  Dkt. No. 6 at 18-22.  Under the AEDPA, state

prisoners have one year from the latest of four triggering events in which to file a federal habeas

petition.  28 U.S.C. § 2244(d)(1).  These events include:

> (A)    the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized
> by the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review; [and]
>
> (D)    the date on which the factual predicate of the claim or claims presented
> could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The one-year limitations period generally runs from the date the judgment

became "final" under § 2244(d)(1)(A), unless a petitioner alleges facts that implicate §

2244(d)(1)(B), (C), or (D).  *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000).  And

different claims might implicate different triggering events.  *See Prendergast v. Clements*, 699

F.3d 1182, 1187 (10th Cir. 2012) (explaining that "§ 2244(d)(1) should be applied on a claim-by-

claim basis"); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) ("[Section] 2244(d)(1)

provides that a '1–year period of limitation shall apply to an *application* for a writ of habeas

corpus.' (Emphasis added.) The subsection then provides one means of calculating the limitation

with regard to the 'application' as a whole, § 2244(d)(1)(A) (date of final judgment), but three

others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); §

2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).").

Respondent contends the Petition is untimely under § 2244(d)(1)(A) because Hendrix's 2008 Judgment became final in 2010 and "[t]he finality of [his] judgment was not destroyed" by the state district court's order vacating the 2008 Judgment.  Dkt. No. 6 at 19-20 (citing *Matthis v. Cain*, 627 F.3d 1001, 1003-04 (5th Cir. 2010)).  Respondent further contends that, to the extent the Petition could be read as asserting timeliness under § 2244(d)(1)(D), the Petition is untimely because "a ruling on collateral review cannot serve as a new factual predicate and re-start a prisoner's limitations period pursuant to § 2244(d)(1)(D)."  Dkt. No. 6 at 20-22.

The Court agrees that the Petition is not timely under § 2244(d)(1)(A).  Hendrix's judgment became final in May 2010, his AEDPA deadline under § 2244(d)(1)(A) expired in May 2011, and the record does not support that statutory tolling or equitable tolling could render the Petition, filed in 2023, timely.  The Court nonetheless finds that the Fourteenth Amendment due process claim is timely under § 2244(d)(1)(D).  As previously stated, that subsection provides a one-year limitations period that begins on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  As Respondent acknowledges, "the predicate for [Hendrix's] claim—that the state district court unconstitutionally reinstated his murder conviction—did not exist at the time his convictions became final."  Dkt. No. 6, at 21.  And, on the record presented, the earliest date a reasonably diligent petitioner could have discovered the factual predicate for the Fourteenth Amendment due process claim was November 4, 2021, when the state district court announced in open court that it would grant the State's motion to vacate the April 2021 order and reinstate Hendrix's 2008 Judgment.  *Cf. Johnson*, 544 U.S. at 308-11 (holding, in case wherein federal prisoner sought to reopen federal sentence based on vacatur of state conviction used to enhance federal sentence, that § 2255's statute of limitations runs from the date defendant received notice of vacatur, but only if defendant diligently

21

pursued vacatur of state conviction following entry of federal judgment).  Respondent's primary

argument against applying § 2244(d)(1)(D) rests on Respondent's view that Hendrix's Fourteenth

Amendment due process claim does not present a cognizable habeas claim and "that a ruling on

post-conviction cannot serve as a new factual predicate for purposes of § 2244(d)(1)(D)."  Dkt.

No. 6 at 20-22.  As previously discussed, this argument lacks merit under the circumstances of this

case.  *See supra*, n.8; *Graham*, 101 F.4th at 1205 (distinguishing between federal habeas claims

that challenge state postconviction procedures, based on perceived errors of state law, and federal

habeas claims that assert constitutional errors arising from a state court's alleged misapplication

of state law).  The Court thus finds that, with the benefit of statutory tolling, the Petition is timely

under § 2244(d)(1)(D).[12]

### 3.    Conclusion

Based on the foregoing analysis, the Court concludes that the Petition is not a second or

successive petition subject to 28 U.S.C. § 2244(b)'s procedural requirements and that the Petition

is timely under 28 U.S.C. § 2244(d)(1)(D).  The Court therefore DENIES the Motion to Dismiss.

### B.    Petition

Having denied Respondent's Motion to Dismiss, the Court finds that further briefing on

the merits of Hendrix's Fourteenth Amendment due process claim is unnecessary.  *See* 28 U.S.C.

§ 2243 (providing that habeas court shall "dispose of the matter as law and justice require").  The

Court will therefore proceed to the merits of that claim.

---

[12]   Under § 2244(d)(1)(D), the one-year limitations period began to run on November 4, 2021.
Because the state district court immediately stayed its ruling and Hendrix promptly sought review
in the OCCA through his Writ Application, the limitations period was tolled until April 18, 2023,
when the OCCA denied the Writ Application.  *See* 28 U.S.C. § 2244(d)(2) (providing that the
AEDPA limitations period is tolled during the pendency of any "properly filed application for
State post-conviction or other collateral review with respect to the pertinent judgment or claim").

Hendrix claims "the district court's Order of Vacatur re: the dismissal of [his] state conviction violates [his] due process rights under the Fourteenth Amendment." Dkt. No. 1 at 5. As factual support for this claim, Hendrix states: "The Tulsa County District Court granted my application for PCR on 4.1.2021, pursuant to *McGirt v. Oklahoma* [and] dismissed my state conviction. The court granted the State's motion to vacate the order granting PCR based on OCCA's decision in *Matloff v. Wallace*, thereby reinstating my state conviction." *Id.*

As previously discussed, the Court understands from Hendrix's filings and from the record of state court proceedings that Hendrix effectively asserts the same Fourteenth Amendment due process claim that he presented to the OCCA through his Application—namely, that the State violated his Fourteenth Amendment right to due process by arbitrarily depriving him of a liberty interest that he obtained when the state district court's order granting postconviction relief became final. *See* Dkt. No. 6 at 434-35 (citing *Hicks* and asserting that the "Order of Vacatur directly attacks the liberty interest of" Hendrix and resulted in "an arbitrary deprivation by the State of a Fourteenth Amendment Right in violation of Due Process" because the State waived its right to appeal the order granting postconviction relief).

The OCCA rejected this claim, reasoning, in part, that state law provided the state district court authority to vacate its order granting postconviction relief despite the State's failure to timely appeal. The OCCA stated:

> From the outset, the District Court's grant of post-conviction relief was based on an order and judgment of this Court in *Bosse* which, at that time, was not final and which we subsequently vacated and withdrew based on *Matloff*. *See Bosse*, 2021 OK CR 23, 495 P.3d 669. "The effect of the District Court's order was to discharge an offender who was under lawful [judgment and] sentence." *Application of Anderson*, 1990 OK CR 82, ¶ 5, 803 P.2d 1160, 1163. The erroneous judicial release by the District Court of a prisoner is subject to prompt correction by the court. *See Harris v. District Court of Oklahoma County*, 1988 OK CR 26, ¶ 4, 750 P.2d 1129, 1130-31. This is so even when the unauthorized dismissal occurs in the context of an order granting post-conviction relief which is not timely appealed by

the State.  *See Anderson*, 1990 OK. CR 82, ¶¶ 3, 5, 803 P.2d at 1162, 1163.  That is particularly so here given the misdirection our original decision in *Bosse* gave to both the District Court and the parties.

Dkt. No. 6 at 440.  The OCCA then noted that this "outcome is fully consistent with *McGirt*" because the *McGirt* Court recognized that "procedural bar rules and other legal doctrines" might preclude defendants from challenging final convictions.  *Id.* at 440-41.  In denying Hendrix's due process claim, the OCCA stated:

> Because the initial grant of post-conviction relief in this matter was based upon a decision with no precedential value and which was later withdrawn, we also reject Petitioner's contention that his right to due process was violated by the trial court's action.  *See Harris*, 1988 OK CR 26, ¶ 4, 750 P.2d at 1130-31.  Under the unique circumstances this case presents, Petitioner has no legitimate liberty interest in judicial release.

*Id.* at 442.

When, as here, a state appellate court has rejected a federal claim on the merits, a petitioner must show, as a precondition to federal habeas relief, that the state appellate court "acted unreasonably in determining the facts or in applying a Supreme Court holding."  *Graham*, 101 F.4th at 1207.  Even granting Hendrix the benefit of liberal construction afforded to pro se litigants, he has not shown that federal habeas relief is warranted.  In his Third Motion to Amend, Hendrix appears to argue that the OCCA's decision was unreasonable as a matter of law because Supreme Court precedent holds that a change in law should not be applied to vacate an otherwise final order.  Dkt. No. 18 at 5-8.  The precedent Hendrix cites includes *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981); *Sunal v. Large*, 332 U.S. 174 (1947); and *United States v. Swift & Company*, 286 U.S. 106 (1932).  Dkt. No. 18 at 5-6.  Notably, Hendrix did not ask the OCCA to consider any of these precedents when he raised his Fourteenth Amendment due process claim in his Writ Application.  Rather, he relied solely on *Hicks* to support his claim.  But even if he had relied on these newly cited cases, none advances his position.

*Sunal* is the only case among the three that involves a request for habeas relief, and the requests in that case were made by federal prisoners who filed no appeals to challenge their convictions but later sought federal habeas relief based on a favorable change in the law. 332 U.S. at 175-78. The question in that case was whether a federal prisoner, having failed to timely appeal from a final criminal judgment, could nonetheless seek federal habeas relief based on a favorable change in the law. *Id.* Before answering that question, the *Sunal* Court expressly stated that it would disregard or "put to one side comparable problems respecting the use of habeas corpus in the federal courts to challenge convictions obtained in the state courts." *Id.* at 178. And the answer the *Sunal* Court settled on for federal prisoners was no, in all but "exceptional circumstances" a federal prisoner may not use "the writ of habeas corpus . . . to do service for an appeal." *Id.* at 178-83. It was not objectively unreasonable for the OCCA to fail to apply *Sunal* in adjudicating Hendrix's Fourteenth Amendment due process claim when *Sunal* does not clearly establish federal law relevant to Hendrix's claim. As discussed, *Sunal* reaffirmed the general rule that federal prisoners who do not appeal from a federal criminal judgment cannot seek a writ of habeas corpus based on a favorable change in the law that occurred after the time to appeal expired. Hendrix argues, unpersuasively, that the OCCA unreasonably applied *Sunal* when the OCCA confronted a decidedly different question than the *Sunal* Court—namely, whether a state court violates a state prisoner's federal right to due process by vacating an order granting state postconviction relief to a state prisoner based on a change in state law that favors the state when the state failed to appeal from the final order granting postconviction relief.

The two remaining cases are even less helpful for Hendrix. The question presented in *Federated Department Stores* was "whether the Court of Appeals for the Ninth Circuit validly created an exception to the doctrine of res judicata" when the Ninth Circuit "held that res judicata

does not bar relitigation of an unappealed adverse judgment where . . . other plaintiffs in similar actions against common defendants successfully appealed the judgments against them." 452 U.S. at 395. But in *Hendrix*'s case, the OCCA neither applied nor created an exception to the doctrine of res judicata to reject his due process claim. Instead, the OCCA reasoned that the state district court, in accordance with state law, retained limited jurisdiction to vacate a judgment that the state district court lacked authority under state law to enter in the first place, despite the state's failure to file a postconviction appeal. Dkt. No. 6 at 439-40. And, while a jurisdictional issue was presented in *Swift & Company*, that issue had nothing to do with a state district court's authority to vacate an unappealed postconviction judgment that turned out to be "unauthorized" by state law. *Swift & Company* instead involved modification of a consent decree entered in a federal antitrust case brought by the United States to dissolve a monopoly of five meat packers. 286 U.S. at 109-10. The Supreme Court stated in that case, "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent." *Id.* at 114. The Supreme Court reasoned that "[p]ower to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints," and that even absent an express reservation, "power there still would be by force of principles inherent in the jurisdiction of the chancery." *Id.* It was objectively unreasonable for the OCCA to apply *Swift & Company* when neither the facts nor the legal principles therein have any apparent connection to the facts and legal principles at issue in Hendrix's case.

In any event, turning back to the Supreme Court precedent that Hendrix did ask the OCCA to apply, namely, *Hicks*, the Tenth Circuit in *Graham* considered and rejected a better developed Fourteenth Amendment due process claim that relied on *Hicks* and that involved nearly identical facts and a nearly identical decision from the OCCA rejecting that claim. *Id.* at 1205-10. As the

26

*Graham* court reasoned:

> The resulting constitutional issue is whether the state appeals court acted arbitrarily under Oklahoma law in allowing the state district court to modify the initial order after the State's appeal time had expired.  [The petitioner] suggests this application of state law was arbitrary.  The [OCCA] might or might not have been right in upholding the state district court's power to reinstate the convictions.  But at least some fair-minded jurists could reasonably credit the state appeals court's application of *Harris* and *Application of Anderson*.  So the state appeals court had leeway to reject [the petitioner's] characterization of its approach as *arbitrary*.  Given that leeway, "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

*Id.* at 1209-10 (first three alterations added) (emphasis in original).  Just as habeas relief was not warranted in *Graham*, habeas relief is not warranted here because "at least some fair-minded jurists could reasonably credit" the OCCA's application of its own decisions to conclude that the state district court had jurisdiction to vacate the initial order granting Hendrix's third application for postconviction relief, vacating his 2008 Judgment, and dismissing his case, despite the State's failure to timely appeal that initial order.  *Id.* at 1210; *see also id.* at 1208 ("Here we're not addressing the arbitrary deprivation of a state-law right (like the one in *Hicks*); we're instead addressing whether the Constitution prevents a state court from applying its own law to modify an order after the appeal deadline expired.  Neither the Supreme Court nor our court has ever applied *Hicks* in a similar situation.").

Based on the foregoing, the Court therefore denies the Petition as to Hendrix's timely and exhausted Fourteenth Amendment due process claim arising from the state district court's reinstatement of his 2008 Judgment.

## III.   Conclusion

The Court concludes that the Petition is not a second or successive petition and the Petition is timely.  The Court therefore DENIES Respondent's Motion to Dismiss.  The Court further concludes that additional briefing on the Fourteenth Amendment due process claim raised in the

Petition is not necessary and that Hendrix has not shown that federal habeas relief is warranted as to that claim. The Court therefore DENIES the Petition. Lastly, the Court concludes that reasonable jurists would not debate the procedural or substantive rulings and that no certificate of appealability should issue. *Slack*, 529 U.S. at 484; 28 U.S.C. § 2253(c). The Court therefore DENIES a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.    Respondent's Motion to Dismiss Petition as a Second or Successive Petition and/or as Untimely [Dkt. No. 5] is DENIED;

2.    Hendrix's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Dkt. No. 1] is DENIED;

3.    a certificate of appealability is DENIED; and

4.    a separate judgment shall be entered in this matter.

Dated this 17th day of September, 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE